UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

VINCENT TERIO,

                              Plaintiff,                                              05 Civ. 5918 (RPP)

              - against -                                                   **OPINION and ORDER**

MICHAEL JOHANN, SECRETARY OF AGRICULTURE
(USDA"), ROBERT DOAR, COMMISSIONER NEW YORK
STATE OF TEMORARY DISABILITY ASSISTANCE
("OTDA"), AND CATHERINE TOMPKINS, PUTNAM
COUNTY DEPARTMENT OF SOCIAL SERVICES ("PCDSS")
                              Defendants.

-----------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        On July 28, 2005, Plaintiff filed an Amended Complaint against Michael Johann,

Secretary of Agriculture; Robert Doar, Commissioner of the New York State Office of

Temporary and Disability Assistance ("OTDA"); OTDA; and Catherine Tompkins, Putnam

County Department of Social Services (the "County Defendant"); as defendants.[1]  (Am. Compl.

¶¶ 8-11.)  The Complaint alleges that Defendants violated 42 U.S.C. § 1983 by failing to give

Plaintiff a hearing within sixty days after his request following denial of his public assistance

applications and demands for declaratory and injunctive relief.  (Am. Compl. ¶ 12.)[2]  Plaintiff

alleges that he did not receive a timely fair hearing on his claim for Temporary Assistance and

had not received any fair hearing with respect to his Food Stamp Application.  Plaintiff asserted

---

[1] On June 27, 2005, Plaintiff Vincent Terio filed a Verified Complaint and Demand for Jury Trial against Michael
Johann, Secretary of Agriculture USDA ("Secretary of Agriculture"); Joel Dulberg, Administrative Hearing Officer;
and Catharine Spranzmann, Director of Eligibility, Putnam County Department of Social Service.  (Compl. ¶ 1.)  On
July 20, 2005, this Court ordered Plaintiff to serve copies of the Complaint on Robert Doar, Commissioner of
OTDA, and on OTDA, adding those parties as defendants in this action since OTDA administers the Food Stamp
Program and Temporary Assistance in New York State.  (Order 1, July 20, 2005.)
[2] The Public Assistance program in the State of New York includes Temporary Assistance, Family Assistance,
Safety Net Assistance, and Food Stamps.  (Compl. ¶ 12, Ex. 2.)

that this violates 7 C.F.R. § 271.1(o),[3] which provides that a "[p]rompt, definitive and final administrative action must be taken by the state agency within 60 days of any request of a hearing." (7 C.F.R. § 271.1(o).) Plaintiff further alleges violations of his Fourteenth Amendment guarantees of due process and equal protection.[4] (Am. Compl. ¶¶ 24-25.)

On October 3, 2005, Defendants filed motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. On October 18, 2005, Plaintiff responded by filing a Notice of Cross Motion for summary judgment with a supporting Affidavit. (Notice of Cross Motion and Opposition Papers).

For the following reasons, Defendants' motions to dismiss the complaint are granted, and Plaintiff's Cross-Motion is denied as moot.

I.      BACKGROUND

Plaintiff is a 75-year-old man living alone who receives $707 of Social Security Disability Income monthly. (Am. Compl. ¶ 7, 16.) In late 2004, he made two separate applications for public assistance: one for Temporary Assistance on November 30, 2004[5], and one for Food Stamps on December 1, 2004.

On March 24, 2005, Plaintiff's application for Temporary Assistance was "Not Approved" by the County Defendant "because [Plaintiff's] countable income of $785.20 is more that the 'PA' limit of $775.83 monthly for a household of 1." (Id. Ex. 4.) On March 28, 2005, well before the deadline of May 23, Plaintiff promptly submitted a "Request For a Fair Hearing"

---

[3] This provision is in a previous version of the implementing regulations, but a similar provision can be found in the current incarnation at 7 C.F.R. 273.15(c)(1).
[4] Plaintiff also attempts to file a class action (Am. Compl. ¶¶ 4-6.); however, a pro se plaintiff may not act as the representative of a class, Phillips v. Tobin, 548 F.2d 408 (2d Cir. 1976); Nwanze v. Philip Morris Cos., No. 97 Civ. 7344, 1999 WL 292597, at *2 (S.D.N.Y. May 10, 1999).
[5] The copy of Plaintiff's application for Temporary Assistance attached as an exhibit to his Complaint is actually

to the New York State Office of Temporary and Disability Assistance ("OTDA") for review of the initial decision.  (Id.)  Plaintiff alleges that despite his timely request, "the administrative scheduling unit refused to schedule a fair hearing . . . ."  (Id. ¶ 13.)  Plaintiff finally received a hearing on the denial of his application for Temporary Assistance on June 17, 2005.  The OTDA judge decided that Plaintiff committed an intentional program violation by providing false information on his application.  (Id. Ex. 6 at 5.)  Specifically, the judge found that on his application Plaintiff had deliberately and intentionally "responded 'NO' to the question [whether] he had ever been found guilty of and/or been disqualified for Temporary Assistance and/or Food Stamp benefits because of fraud/intentional program violation" ("IPV") when he had previously committed three Food Stamp IPVs.  (Id. at 4-5.)  This preliminary finding relied on a decision issued on May 31, 2002 in which the State Commissioner permanently disqualified Plaintiff from participating in the Food Stamp program after his third IPV[6]: i.e. knowingly making a false statement in an attempt to receive assistance to which he was not entitled.  (Id. at 4);  On June 28, 2005, the State Commissioner affirmed the OTDA's decision denying Plaintiff's application for Temporary Assistance and directed the Agency to disqualify Plaintiff from receiving Temporary Assistance for six months pursuant to 18 N.Y.C.R.R. 359.9(a).  (Id.)

Separately from his Temporary Assistance application, Plaintiff applied for Food Stamps on December 1, 2004.  (Am. Compl. ¶ 12.)  After having his Food Stamp application denied, Plaintiff placed a request on January 11, 2005 for a fair hearing with OTDA.  (Id. ¶ 12; Ex. 3.)  Acknowledgment of Plaintiff's fair hearing request – including notice that "the state commissioner has not directed the local district to continue [his] assistance unchanged pending the outcome of the fair hearing decision" – was sent to Plaintiff on January 13, 2005.  (Id. ¶ 12.)

---

dated February 9, 2005.

The State Commissioner's opinion on June 28, 2005 does not relate to Plaintiff's December 1, 2004 application for Food Stamps.

Plaintiff sues claiming that he is being denied a timely fair hearing on his claim for Temporary Assistance and on his Food Stamp claim in violation of 42 U.S.C. § 1983 under the Food Stamp Act ("FSA") and its regulations. Plaintiff further claims that he has been denied Food Stamp, Public Assistance, and Medicare benefits from 1997 through 2005, and requests retroactive damages. (Am. Compl. ¶ 30.)

## II.    DISCUSSION

### A.    Standard of Review

Defendants filed motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

When considering a motion under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable references in the plaintiff's favor." Chambers v. Time Warner, 282 F.3d 147, 152 (2d Cir. 2002) (citations omitted). Dismissal pursuant to Rule 12(b)(6) is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000). Accordingly, the Court should "merely . . . assess the legal feasibility of the complaint [and not] . . . assay the weight of the evidence which might be offered in support thereof." Eternity Global Master Fund Ltd. V. Morgan Guar., Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (internal quotations omitted).

---

[6] See 7 C.F.R. 275.16 (b)(iii).

A court may consider other documents "where the complaint 'relies heavily upon [their] term[s] and effect[s],' which renders the document[s] 'integral' to the complaint." Chambers, 282 F.3d at 153, *quoting* Int'l. Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1991).  These documents may include attached exhibits or documents incorporated by reference in the complaint.  See Chambers, 282 F.3d at 153.

"On a motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists." Chayoon v. Chao, 355 F.3d 141, 143 (2d Cir. 2004) quoting Garcia v. Akwesasne Hous. Auth., 268 F.3d 76, 84 (2d Cir. 2001).

**B.     Plaintiff's Complaint Complies with Rule 8**

The Secretary of Agriculture argues that the Amended Complaint does not meet the minimal standards for pleading set forth in Rule 8 of the Federal Rules of Civil Procedure. (Federal Memorandum 6-7).  Rule 8 requires that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a).  Pro se plaintiffs are afforded considerable latitude in complying with Rule 8.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam).

Plaintiff's claims are sufficiently discernable to be addressed rather than dismissed for failure to comply with Rule 8.  Although an amended complaint ordinarily supercedes the original, see Harris v. City of New York, 186 F.3d 243, 249 (2d Cir. 1999), the original and amended complaints are considered together in order to understand the pro se plaintiff's claims as best as possible.  See, e.g., Vapne v. Eggleston, No. 04 Civ. 565, 2004 WL 2754673 at *2 (S.D.N.Y. 2004).

**C.     The Food Stamp Program**

The federal food stamp program – governed by the FSA – is an intricate statutory scheme that disseminates funding to the states for the operation of individual food stamp programs. Administration of the Food Stamp program is entrusted to state agencies. <u>See</u> 7 U.S.C. § 2020(a). State agencies are also responsible for remedying underissuances and improper denials of food stamp benefits. <u>See</u> 7 U.S.C. § 2020(b).

Congress places ultimate responsibility for the enforcement of the FSA with the Secretary of Agriculture. The FSA's enforcement provision gives the Secretary discretionary power to address non-compliance with the federal regulations. <u>See</u> 7 U.S.C. § 2020(g). The federal regulations enacted pursuant to the FSA provide more detailed procedural requirements for state and local agencies administering the FSA. Specifically, "[w]ithin 60 days of receipt of a request for a fair hearing, the State agency shall assure that the hearing is conducted, a decision is reached, and the household and local agency are notified of the decision." 7 C.F.R. § 273.15(c)(1). If a New York applicant wishes to challenge the resolution of her application after a fair hearing, she must do so by bringing a proceeding in state court under Article 78 of the New York Civil Practice Law and Rules. <u>See e.g.</u>, <u>Vapne v. Eggleston</u>, No. 04 Civ. 565, 2004 WL 2754673 at *5 (S.D.N.Y. December 1, 2004) ("Article 78 is routinely the venue in which adverse food stamps determinations are challenged, often successfully.").

**D.      Plaintiff's Claims against the Secretary of Agriculture Are Barred by Sovereign Immunity**

Plaintiff sues the Secretary of Agriculture in both his individual and official capacities for monetary, declaratory, and injunctive relief. (Am. Compl. ¶ 8.) All claims against the Secretary of Agriculture in his official capacity for monetary or retrospective relief are barred by sovereign immunity and dismissed for lack of subject matter jurisdiction unless the government has

consented to suit.  See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir.

1994) ("[A]n action against . . . federal officers in their official capacities is essentially a suit

against the United States, such suits are also barred under the doctrine of sovereign immunity,

unless such immunity is waived.").

Furthermore, in order to sue the Secretary under 42 U.S.C. § 1983 in his official capacity

for injunctive or declaratory relief, Plaintiff must overcome the bar of sovereign immunity.  A

waiver of the government's sovereign immunity "is not lightly to be inferred."  Doe v. Civiletti,

635 F.2d 88, 93 (2d Cir. 1980).  The general federal jurisdictional statute, 28 U.S.C. § 1331, does

not include a general waiver of sovereign immunity.  Thus, such a waiver if it exists must be

found in the statute giving rise to the cause of action.  See id. at 94.  The FSA does not contain

any express waiver of sovereign immunity to allow individual participants to sue the Secretary of

Agriculture based on the Secretary's review of state agencies' administration of the Food Stamp

program.[7]

Although suits for monetary damages against federal officials in their individual

capacities can be brought as Bivens[8] actions, here no such action lies because Plaintiff has

identified no personal actions on the part of the Secretary to ground Plaintiff's claims.  See Black

v. United States, 534 F.2d 524, 528 (2d Cir. 1976) (holding that plaintiffs cannot rely on a

respondeat superior theory of liability in actions against federal officials); see also Economou v.

Butz, 466 F. Supp. 1351, 1355 (S.D.N.Y. 1979) (dismissing § 1983 action against Secretary of

Agriculture in part for failure to allege personal involvement in any alleged wrongdoing).[9]

---

[7] Note that the FSA does explicitly waive sovereign immunity in other provisions, including permitting food stores
to sue if they are dissatisfied with their administrative hearings or are denied participation in the Food Stamp
program.  See 7 U.S.C. § 2023(a)(13).
[8] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) (permitting the
recovery of monetary damages from federal agents who violated Fourth Amendment rights).
[9] Plaintiff only alleges that the Secretary of Agriculture "is responsible for the general departmental direction for the

The only other possible avenue of relief against the Secretary of Agriculture would be to request a writ of mandamus under 28 U.S.C. § 1361 against the Secretary to force him to initiate an investigation or take other actions to force the state agencies to comply with the fair hearing provisions of the FSA.  However, this Court lacks mandamus jurisdiction to compel the Secretary of Agriculture to investigate OTDA's conduct with respect to Plaintiff.  The Secretary only has discretionary authority in ordinary circumstances to investigate state agencies such as OTDA for failure to comply with the provisions and regulations of the FSA.  See 7 U.S.C. § 2020(g).  This Court has no authority to compel the Secretary to take such discretionary action. See e.g., Vapne v. Eggleston, No. 04 Civ. 565, 2004 WL 2754673 at *4 (S.D.N.Y. 2004) (finding no mandamus jurisdiction over the Secretary of Agriculture to compel action under 7 U.S.C. § 2020(g)).  Accordingly, the Secretary of Agriculture's motion to dismiss is granted.

### E.    Plaintiff's Claim For Denial of a Timely Fair Hearing

#### 1.    For Temporary Assistance

Unlike the Food Stamp Program, Safety Net Assistance[10] is governed entirely by New York law.[11]  The 60-day requirement in 7 C.F.R. § 273.15(c)(1) for holding a fair hearing is inapplicable since it only applies to Food Stamp programs.  See 7 C.F.R. § 273.15(c)(1).  Fair hearings for Temporary Assistance (Safety Net Assistance) do have a timeliness restriction under New York law, but that requirement does not have a sixty day limitation.  It states only that the hearings be held "at a time and place convenient to the appellant as far as practicable."  18 N.Y.C.R.R. § 358-5.2(a).

---

Food Stamps" Program.  (Am. Compl. ¶ 8.)

[10] Plaintiff does not qualify for Family Assistance since he lives alone; his Temporary Assistance application will be treated as an application for Safety Net Assistance for purposes of this opinion.  (Compl. ¶ 7, Ex. 2 at 2.).  To qualify for Family Assistance, applicants must have a minor child living with them.  See 18 N.Y.C.R.R. § 369.1(b).

[11] The program is defined by N.Y. Soc. Serv. Law § 157 with eligibility requirements defined in N.Y. Soc. Serv. Law § 158 and governing regulations in 18 N.Y.C.R.R. §§ 370.1-9.

Despite the fact that there may have been a violation of 18 N.Y.C.R.R. § 358-5.2(a) on the face of the Complaint, the Eleventh Amendment protects state officials from suits in federal court alleging violations of state law.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) (holding the Ex Parte Young exception inapplicable to suits against state officials alleging violations of state law); see also Kostok v. Thomas, 105 F.3d 65, 68 (2d Cir. 1997) (holding that state law claims against state officials are barred by the Eleventh Amendment even if appended to a federal constitutional claim).

Accordingly, as a result of the Eleventh Amendment bar, all that remains of Plaintiff's potential claims based on his application for Temporary Assistance are his claims that the delay of his hearing violates the Due Process and Equal Protection clauses of the Fourteenth Amendment.  These claims will be considered later in the opinion.

### 1.        For Food Stamps – Plaintiff's § 1983 Claim

To bring an action for violation of Title 42 U.S.C. § 1983, "a plaintiff must assert the violation of a federal right, not merely a violation of federal law."  King v. Town of Hempstead, 161 F.3d 112, 114 (2d Cir. 1998) (quoting Blessing v. Freestone, 520 U.S. 329 (1997)).  To determine whether a federal statute creates an enforceable federal right, the Supreme Court's test laid out in Blessing – and reaffirmed in Gonzaga Univ. v. Doe, 536 U.S. 273 (2002) – must be applied to a specific statutory provision.

> First, Congress must have intended that the provision in question benefit the plaintiff.  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States.

King, 161 F.3d at 114 (quoting Blessing, 520 U.S. at 329).

Some provisions of the FSA have been held to create federal rights for the purposes of §

1983,[12] but the issue of whether the 60-day fair hearing provision of 7 F.R.C. § 273.15(c)(1) creates a federal right is an open question.  See, Williston v. Eggleston, 410 F.Supp.2d 274, 277 (S.D.N.Y. 2006) (noting that the question of whether there is a private right of action under the FSA "has not yet been directly addressed by either the Supreme Court or the Second Circuit"); see also Kapps v. Wing, 404 F.3d 105, 127 (2d Cir. 2005) (declining "to decide . . . whether § 8624(b)(13) creates privately enforceable rights" because "[i]n the aftermath of the [Supreme] Court's decision in Gonzaga University, [the Second Circuit] has not yet established a unified approach to provisions contained in spending clause statutes . . .").  The issue is further complicated by the circuit split over the issue of whether an administrative regulation, on its own, can create an enforceable federal right.  See King, 161 F.3d at 115 (declining to decide the issue, but noting that "[t]he circuits are divided on the question of whether a regulation, standing alone, is sufficient to create a federal right necessary for a § 1983 suit"); see also Reynolds v. Giuliani, No. 98 Civ. 8877, 2005 WL 342106, at *16, n. 8 (S.D.N.Y. Feb. 14, 2005).

On the facts of this case, it is not necessary to determine whether the fair hearing provisions of the FSA and its regulations create a federal right – a complex and unsettled issue in this Circuit – because any failure by the state to provide a timely hearing for Plaintiff's Food Stamp application does not create a remediable injury.

Assuming that 7 F.R.C. § 273.15(c)(1) does create a federal right enforceable under § 1983, in order to obtain relief, Plaintiff must still show that the State Defendants' failure to grant him a timely hearing is significant enough to create a remediable injury.  While the Second Circuit has not established what level of compliance is necessary with respect to the FSA and its

---

[12] See Meachem v. Wing, 77 F. Supp. 2d 431, 440 (S.D.N.Y. 1999) (finding "that plaintiffs may assert claims pursuant to § 1983 based on defendants' alleged violations of the sections of the Food Stamp Act that guarantee them fair hearings in accordance with the standards provided for by federal law" since the statute contains mandatory rather than precatory language); Reynolds v. Giuliani, 35 F. Supp. 2d 331, 340-41, modified, 43 F. Supp.

regulations, a district court recently relied on a Ninth Circuit case – <u>Withrow v. Concannon</u>, 942
F.2d 1385 (9th Cir. 1991) – to determine that New York City agencies were "obliged to comply
strictly with the Food Stamp . . . Act[]."  <u>Reynolds v. Guiliani</u>, 2005 WL 342106, at *17.
Although injunctive relief may be granted when complete compliance is lacking, it is also within
the court's discretion to deny the request for an injunction under a de minimis exception
"'whenever an agency that is otherwise in full compliance fails in one or a very few sporadic
instances.'"  <u>Id.</u> (quoting <u>Withrow</u>, 942 F.2d at 1388). The Ninth Circuit also notes that an
analysis of the agency's overall compliance rate should be taken into account when finding a de
minimis exception to strict compliance.  <u>See Withrow</u>, 942 F.2d at 1388.

    Plaintiff provides no data and makes no allegations against the OTDA regarding systemic
non-compliance with 7 F.R.C. § 273.15(c)(1).  Plaintiff only alleges that he was denied a timely
fair hearing on the denial of his Food Stamp application.  However, the administrative judge, in
denying Plaintiff's Temporary Assistance application, found that Plaintiff had made an
intentionally false statement in his application for Temporary Assistance; although Plaintiff had
been permanently disqualified from the Food Stamp program for making three false applications
for Food Stamps in the past, he denied having ever been refused Food Stamps.  Plaintiff does not
allege that this permanent disqualification was improper, and since it occurred in 2002, it may
now be too late to file an appeal from that determination.  The Code of Federal Regulation
denies the reviewing body at a fair hearing the power to overturn a disqualification from the
Food Stamp program.  7 C.F.R. § 273.16 ("The determination of intentional Program violation
made by a disqualification hearing official cannot be reversed by a subsequent fair hearing
decision.").  Plaintiff may be able to seek reinstatement to the Food Stamp Program based on

---

2d 492 (S.D.N.Y. 1999) (finding a federal right exists under 7 U.S.C. § 2020(e)(2)(B) of the FSA).

changed circumstances and the lengthy penalty to which he has already been subjected.  In any

event, were this Court to order a fair hearing on his Food Stamp Application, it would inevitably

be denied based on the finding of permanent disqualification from the Food Stamp program

referred to in Plaintiff's fair hearing on the denial of his Temporary Assistance application.  Such

relief would be de minimis – the denial of a timely hearing at which his permanent

disqualification cannot be reversed does not rise to the level of a remediable injury.

> **F.      Fourteenth Amendment Due Process Claims**

Plaintiff alleges that the delay in receiving a fair hearing amounts to a violation of due

process under the Fourteenth Amendment.  Plaintiff is not required to exhaust state remedies

before bringing a § 1983 action, <u>Wilbur v. Harris</u>, 53 F.3d 542, 543 (2d Cir.1995), but he must

still prove that state procedural remedies are inadequate:

> "The Supreme Court has clearly distinguished between a claim that an established
> state procedure does not afford procedural due process and a claim that a property
> right was lost because of a random and unauthorized act by a state actor.  In the
> latter case, the existence of an adequate post deprivation state remedy for the loss
> affords due process."

<u>Marino v. Ameruso</u>, 837 F.2d 45, 47 (2d Cir. 1988).  Plaintiff does not allege that the state

procedures in place, if strictly complied with, would be insufficient due process under the

Fourteenth Amendment.  Furthermore, state procedures gave Plaintiff an avenue for post-

deprivation relief: an Article 78 proceeding in state court challenging the denial of his

application.

Additionally, it is still not settled in this Circuit whether delay of otherwise sufficient

process will create a constitutional violation of due process.  <u>See</u> <u>N.Y. State Nat'l Org. for</u>

<u>Women v. Pataki</u>, 261 F.3d 156, 167 (2d Cir. 2001) (finding that the availability of an Article 78

proceeding to challenge unreasonable delay in hearings precluded consideration of whether

extreme delay along with prejudice to claimants would violate due process).  Since Plaintiff only alleges that he was prejudiced by the delayed procedure – and since he could have brought an Article 78 proceeding in state court challenging that delay – Plaintiff's procedural due process claims are dismissed.

> **G.     Fourteenth Amendment Equal Protection Claims**

Plaintiff alleges that the State's delay in granting him hearings created two groups that are treated differently: applicants receiving timely hearings and applicants receiving late or no hearings.  "Class of one" equal protection claims can only be maintained where Plaintiff shows "either that there was no rational basis for the unequal treatment, or that the denial of the application was motivated by animus."  Harlen Assocs. v. Inc. Vill. Of Mineola, 273 F.3d 494, 500 (2d Cir. 2001); see also Vill. Of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Since Plaintiff has been denied benefits based on his intentionally false statements there is a rational basis for the government's actions.  Additionally, Plaintiff does not claim or allege facts indicating that his denial of a hearing was due to animus of a public official.  Consequently, Plaintiff's equal protection claim is dismissed for failure to state a claim.

## III.   CONCLUSION

For the reasons stated above, the Court grants Defendants' motions to dismiss Plaintiff's

claims against both the State and Federal Defendants.


IT IS SO ORDERED.

Dated: New York, New York
       September **29** 2006

                                        _____
                                        Robert P. Patterson, Jr.
                                                U.S.D.J.


Copies of this Order sent to:

*Plaintiff Pro Se*

Vincent Terio
P.O. Box 131
Fishkill, NY 12524

Pro Se Office

*Respondent*

Michael J. Garcia, United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
Attn:  Lara K. Eshkenazi
Tel:    212-637-2758
Fax:   212-637-2702

George Anthony Alvarez
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
Tel:    212-416-8663
Fax:   212-416-6077

James A. Randazzo
Santangelo Randazzo & Mangone LLP
151 Broadway
Hawthorne, NY 10532
Tel:    914-328-5590
Fax:    914-328-5591